IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JUDITH R. COLLUM,  　　　　　　　　　　Case No. 6:13-cv-01173-AA
　　　　　　　　　　　　　　　　　　　　　　OPINION AND ORDER
　　　　Plaintiff,

　　v.

CAROLYN W. COLVIN,
Commissioner of Social
Security,

　　　　Defendant.
_____

Richard F. McGinty
McGinty & Belcher, Attorneys
P.O. Box 12806
Salem, Oregon 97301
　　Attorney for plaintiff

S. Amanda Marshall
United States Attorney
Ronald K. Silver
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204

Jeffrey E. Staples
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S/ 221A
Seattle, Washington 98104
　　Attorneys for defendant

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff Judith Collum brings this action pursuant to the Social Security Act ("Act") to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Title II Widow's Insurance Benefits under the Act. For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

## PROCEDURAL BACKGROUND

On June 16, 2009, plaintiff applied for Widow's Insurance Benefits. Tr. 140-48. Her application was denied initially and upon reconsideration. Tr. 79-88. On September 27, 2011, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff appeared with a non-attorney representative and testified. Tr. 39-76. A vocational expert ("VE") also testified. Id. On February 24, 2012, the ALJ issued a decision finding plaintiff not disabled. Tr. 20-33. On June 13, 2013, the Appeals Council denied plaintiff's request for review. Tr. 1-3. Subsequently, plaintiff filed a complaint in this Court.

## STATEMENT OF FACTS

Born on March 24, 1959, plaintiff was 49 years old on the alleged onset date of disability and 52 years old at the time of the hearing. Tr. 23, 47. Plaintiff graduated from high school. Tr. 49, 162. She worked previously as a cashier, produce clerk and

restaurant hostess. Tr. 158, 167. Plaintiff's husband died on January 22, 2008. Tr. 142; see also 20 C.F.R. § 404.335 (claimant applying for Widow's Insurance Benefits must, in relevant part, be the widow of a deceased worker, age 50 or older and disabled). Plaintiff alleges disability as of July 1, 2008, based on post traumatic stress disorder ("PTSD"), osteoarthritis, spondylosis, fibromyalgia, depression and anxiety. Tr. 157.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

## SEQUENTIAL DISABILITY EVALUATION

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. First, the Commissioner evaluates whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner resolves whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant

can perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can work, she is not disabled; if she cannot perform her past relevant work, the process moves to step five and the burden shifts to the Commissioner.

At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national and local economy. <u>Yuckert</u>, 482 U.S. at 142; 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner meets this burden, the claimant is not disabled. <u>Id.</u>

**THE ALJ'S FINDINGS**

At step one of the five step sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 25. As step two, the ALJ determined plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine with a history of surgery, fibromyalgia, degenerative joint disease of the right knee, a depressive disorder, anxiety versus PTSD, a personality disorder and a history of drug addiction. <u>Id.</u>

At step three, the ALJ found that plaintiff's impairments did not meet or medically equal the requirements of a listed impairment. Tr. 26. Because plaintiff was not presumptively disabled at step three, the ALJ continued to evaluate how plaintiff's impairments effected her ability to work. The ALJ found that plaintiff had the residual functional capacity ("RFC") to

Page 5 - OPINION AND ORDER

perform a modified range of light work as defined in 20 C.F.R. § 404.1567(b):

> [s]he can occasionally climb (not ladders, rope or scaffolds), stoop, kneel, crouch and crawl. She needs the option to sit or stand. She can perform simple, repetitive tasks not involving direct contact with the public or more than occasional and brief contact with co-workers.

Tr. 27.

At step four, the ALJ resolved that plaintiff had no past relevant work. Tr. 31. At step five, the ALJ determined that jobs existed in significant numbers in the national and local economy that plaintiff could perform despite her impairments, such as small products assembler and extruder machine operator. Tr. 32. As such, the ALJ concluded that plaintiff was not disabled under the Act. Tr. 33.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) rejecting the medical opinion of Kay Stradinger, Psy.D.; and (2) failing to account for all of her limitations in the RFC and step five finding.

I.  <u>Medical Opinion Evidence</u>

Plaintiff first argues that the ALJ failed to provide legally sufficient reasons, supported by substantial evidence, for discrediting some of the functional limitations assessed by Dr. Stradinger. There are three types of medical opinions in social security cases: those from treating, examining, and non-examining

Page 6 - OPINION AND ORDER

doctors. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995). To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons for doing so. <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing <u>Lester</u>, 81 F.3d at 830-31). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. <u>Id.</u>

On September 19, 2009, Dr. Stradinger performed a one-time examination on plaintiff to evaluate her mental functioning. Tr. 257-63. Dr. Stradinger's assessment was based on plaintiff's self-reports and various tests. <u>Id.</u> The doctor diagnosed plaintiff with methamphetamine and cannabis dependence, in full sustained remission; PTSD, "per history"; and major depressive disorder, in partial remission. Tr. 261. Regarding plaintiff's functional limitations, Dr. Stradinger stated that plaintiff: (1) "is capable cognitively of performing simple and repetitive tasks"; (2) "might have a difficult time interacting appropriately with supervisors, coworkers, and the public at times given her anxiety"; and (3) "might have a difficult time completing a full workweek on a sustained basis given her anxiety and challenges with concentration and persistence."[1] Tr. 262.

---

[1] While not dispositive, the Court notes that there are repeated references in the record to plaintiff's issues with marijuana and methamphetamine. Notably, plaintiff admitted to smoking methamphetamine and marijuana "daily" after her husband's death in 2008 and testified at the hearing that she last used

Page 7 - OPINION AND ORDER

The ALJ incorporated Dr. Stradinger's concrete functional limitation concerning simple and repetitive tasks into the RFC. Tr. 27. In addition, because it was consistent with the other evidence of record, the ALJ adopted Dr. Stradinger's assessed restriction relating to interactions with the public and coworkers. Tr. 27-31, 295, 302; see also Glosenger v. Comm'r of Soc. Sec. Admin., 2014 WL 1513995, *6 (D.Or. Apr. 16, 2014). The ALJ rejected the remainder of Dr. Stradinger's equivocal restrictions because: (1) "results of [a] mental status exam at that time revealed no significant deficits in concentration despite some apparent anxiety"; and (2) "[t]here is no evidence that [plaintiff] would have significant difficulty interacting with supervisors. Her daily activities, such as the work she did as an orderly in prison, gardening, and using the bus, support the conclusion regarding her limitations." Tr. 31.

Initially, an ALJ is not required to incorporate limitations phrased equivocally into the RFC. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 691-92 (9th Cir. 2009); see also Griffith v. Colvin, 2014 WL 1303102, *5 n.3 (D.Or. Mar. 30, 2014) ("Dr. Carrello's statements that Ms. Griffith may have difficulty completing work without interference from her mental impairments or performing work activities on a consistent basis without additional

---

these drugs in August 2010. Tr. 58. While she endorsed a period of sobriety "between 2009 and '10," the precise timing of her drug abuse is unclear. Compare Tr. 58-63 (plaintiff's hearing statements), with Tr. 259 (plaintiff reporting to Dr. Stradinger in September 2009 that she had been sober since August 2008).

Page 8 - OPINION AND ORDER

instructions do not represent work-related limitations of function that need to be reflected in the RFC") (citations and internal quotations and brackets omitted). Accordingly, because Dr. Stradinger prefaced the restrictions that plaintiff argues were wrongfully rejected with the word "might," the ALJ was not required to incorporate them into the RFC. Tr. 262; see also Glosenger, 2014 WL 1513995 at *6 (affirming the ALJ's rejection of functional restrictions assessed by Dr. Stradinger because the doctor used "equivocal language ('might do better' and 'would also likely require')").

Further, an ALJ may afford less weight, even where a treating physician is involved, to opinions that are not accompanied by explanations or references to clinical findings. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ "need not accept the opinion of . . . a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings"); see also Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996). Here, as the ALJ noted, Dr. Stradinger's statements regarding plaintiff's potential difficulty with supervisors and coworkers, and with sustaining a full workweek, are not supported by the record or her clinical findings. Notably, plaintiff worked as an orderly, five days a week for ten months, during her incarceration without any difficulties with attendance, anxiety or supervisors and coworkers. Tr. 52-54. Plaintiff also reported that

Page 9 - OPINION AND ORDER

she takes the bus, attends church and has friends that she talks to on the phone. Tr. 64-65. This evidence demonstrates that plaintiff is capable of sustaining full time work and interacting appropriately with other individuals.

Moreover, Dr. Stradinger noted that plaintiff "was able to concentrate well enough to complete the interview. She gave rather global answers but when asked for specific details, she was able to persist and give them. The pace was average." Tr. 261. As such, Dr. Stradinger did not document any significant issues with plaintiff's concentration, persistence or pace. In addition, although she noted some anxiety during the exam, she did not formally diagnose plaintiff with this condition. Tr. 257-263. In fact, Dr. Stradinger found that plaintiff presented "with improved conditions of anxiety and depression," such that her conditions "may improve somewhat in the next 12 months . . . if she continues to participate in her treatment." Tr. 262; see also Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that can be controlled effectively with medication or treatment are not disabling for purposes of determining eligibility for benefits). Thus, as the ALJ reasonably found, the doctor's own chart notes do not support the functional limitations at issue on appeal.

Additional medical evidence supports the ALJ's findings. Scott Haynes, a psychiatric-mental health nurse practitioner with the Oregon Department of Corrections, described plaintiff as "[a]lert

Page 10 - OPINION AND ORDER

and oriented to self, place and situation" and stated that plaintiff's "[e]xpressed thoughts were organized and relevant . . . [s]hort and long term memory appears to be reasonably intact." Tr. 380, 403-05. Although no functional limitations were assessed, the mental health records from plaintiff's period of incarceration generally show that her psychological conditions improved with medication and treatment. Tr. 378-410. Dorothy Anderson, Ph.D., a state agency consulting source, found that plaintiff was "not significantly limited" in her ability to complete a normal workweek and to accept instructions and respond to criticism from supervisors. Tr. 294. Indeed, in formulating the RFC, the ALJ gave great weight to Dr. Anderson, who opined that plaintiff was capable of mentally performing work consistent with the RFC, because her opinion was "consistent with the objective evidence and the claimant's reported daily activities." Tr. 31. Specifically, Dr. Anderson limited plaintiff to "simple repetitive routine tasks" and "a work setting that does not require direct public contact, or more than occasional, brief contact with co-workers." Tr. 295; see also Tr. 302 (state agency consulting source Sandra Lunblad, Psy.D., affirming Dr, Anderson's findings).[2]

---

[2] The Court recognizes that the opinions of consulting sources are generally afforded less weight. Here, however, because plaintiff failed to submit any medical evidence of her mental health limitations, outside of that discussed herein, the reports from Drs. Stradinger and Anderson constitute the only expert evidence of record.

Page 11 - OPINION AND ORDER

In sum, the ALJ provided legally sufficient reasons, supported by substantial evidence, for discrediting certain facets of Dr. Stradinger's opinion. The ALJ's assessment of the medical opinion evidence is affirmed.

## II. RFC and Step Five Finding

Plaintiff also argues that the ALJ's RFC and step five finding are erroneous because they do not account for all of the functional limitations described in Dr. Stradinger's report. The RFC is the maximum a claimant can do despite her limitations. See 20 C.F.R. § 404.1545(a). In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. SSR 96-8p, available at 1996 WL 374184. Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

As discussed in section I, the ALJ properly discredited the opinion of Dr. Stradinger. In addition, while not dispositive, the Court notes that there is no other medical evidence in the record indicating that plaintiff's mental impairments would preclude her from performing work consistent with the RFC, especially while sober. Accordingly, plaintiff's argument, which is contingent upon a finding of harmful error in regard to this issue, is without

merit. <u>Bayliss</u>, 427 F.3d at 1217-18; <u>Stubbs-Danielson v. Astrue</u>, 539 F.3d 1169, 1175-76 (9th Cir. 2008). The ALJ's RFC and step five finding are upheld.

## CONCLUSION

The Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

Dated this 30th day of July 2014.

_____
Ann Aiken
United States District Judge